**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0220n.06**

**No. 08-5988**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Apr 08, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| HAROLD NOEL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  KEITH, BOGGS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Harold Noel appeals his sentence of 120 months in prison for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g).  Noel argues that the district court failed to appreciate its authority to depart downward from the advisory Guidelines range based on a discharged sentence imposed in state court for conduct related to the federal offense or, alternatively, that the sentence imposed by the district court was unreasonable.  We disagree and affirm.

I.

The Tennessee Court of Criminal Appeals accurately set forth the background facts of this case:

At approximately 8:15 a.m. on June 21, 2002, prominent Memphis attorney Robert Friedman was shot and killed in the parking garage of his office building. Witnesses reported seeing a well-dressed black male in his late twenties to early forties run from the crime scene to a blue Toyota Corolla. When [Noel] became a suspect during the course of the investigation, officers drove to his place of residence to question him. The defendant declined to cooperate with the officers and, for several hours, refused to open the door to his apartment. Eventually, the defendant opened the locked door and was immediately handcuffed and taken to the police station. After several hours of questioning, the defendant admitted his involvement in the shooting.

* * *

The defendant had been represented by the victim in a divorce case that included a custody issue regarding his daughter. He admitted that he had waited in the parking garage for the victim and stated that his plan was "[t]o shoot him for the cruel way he betrayed me in representing me." He described himself as in a state of despair because he had lost everything, including a place to live, in the divorce. The defendant acknowledged that he shot the victim four times with a .38 revolver from a distance of four feet. He also stated that he "wanted to kill Chancellor Alissandratos but I didn't figure I had enough time . . . ." He told officers that he then drove to his apartment, changed clothes, and returned his rental car.

*State v. Noel*, No. W2005-00160-CCA-R3-CD, 2006 WL 2729487, at *1, *6 (Tenn. Crim. App.

Sept. 25, 2006) (second alteration in original).

Noel was charged with first-degree murder and stood trial in Tennessee Criminal Court. The

jury found Noel guilty of the lesser included offense of voluntary manslaughter. He was sentenced

to six years in prison.

On April 20, 2006, a federal grand jury in the Western District of Tennessee returned an

indictment charging Noel with two counts: being a felon in possession of a firearm, and a felon in

possession of ammunition. 18 U.S.C. § 922(g).[1] Pursuant to a plea agreement, Noel pleaded guilty

to having possessed ammunition in exchange for dismissal of the firearm count. The district court

accepted Noel's guilty plea and scheduled the case for sentencing.

Prior to the sentencing hearing, the Probation Office prepared a presentence report ("PSR").[2]

Based on Noel's use of ammunition to commit murder, the PSR included a cross-reference to

U.S.S.G. § 2A1.1(a) for first-degree murder leading to a base offense level of 43. Noel filed

numerous objections to the presentence report, arguing that: (1) the Guideline provision cross-

referencing first-degree murder was not applicable and the base offense level should be calculated

as 14; (2) those portions of the PSR describing Noel's purported mental illness or emotional

problems were inaccurate; (3) Noel was not provided a copy of the psychological evaluation from

the Federal Medical Center ("FMC") located in Fort Worth, Texas; and (4) the government

improperly elicited or offered victim-impact evidence at the sentencing hearing. In addition, Noel

asked for a downward departure on the following grounds: (1) he entered a guilty plea as to the

ammunition count, and the government moved to dismiss the firearm count; (2) he had a minimal

criminal history; (3) he allegedly suffered from mental and emotional problems; (4) he was fifty-four

years old; (5) the underlying state conviction was for voluntary manslaughter, not first-degree

---

[1]The government was able to examine the ammunition recovered from Friedman's body and determined that it was not manufactured in Tennessee. Noel had a prior conviction for a crime punishable by imprisonment for a period of more than one year.

[2]The 2007 edition of the Guidelines Manual applied.

murder, and he had served his sentence; and (6) the shooting resulted from his despair and desperation.

Finally, Noel made a "Special Request." He asked the district court to give him "credit for time served from his original [state] arrest date, June 21, 2002."

On July 31, 2008, the district court held a sentencing hearing. After hearing defense counsel's arguments, the district court adopted the findings contained in the PSR. Noel was given a criminal history category of II because of two criminal history points. A base offense level of 43 was calculated, as authorized by § 2K2.1(c)(1), by cross-reference to § 2A1.1(a) of the Sentencing Guidelines based upon the offense of first-degree murder.[3] The offense level was reduced to 40 because of Noel's acceptance of responsibility. The resulting advisory Guidelines range was from 324 to 405 months, but the charged offense had a statutory maximum penalty of 120 months. After reviewing the PSR, hearing from witnesses, and addressing the 18 U.S.C. § 3553(a) factors, the district court sentenced Noel to 120 months of imprisonment, followed by three years of supervised release.

Noel timely appealed.

II.

---

[3]On this point, the district court stated:

And in your case because of the facts that are contained in your statement, those facts give rise to an appropriate application, an appropriate cross-reference to a first degree murder charge because it came about as a result of a lying in wait and an intentional act on your part.

Noel argues that two pertinent Sentencing Guidelines, namely §§ 5G1.3 and 5K2.23, authorized the district court to grant a downward departure in his case. Although § 5G1.3 on its face does not address the present circumstances, in which a defendant's state sentence has been discharged, application note 4 to § 5G1.3 states:

> **4. Downward Departure Provision**. – In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. *See* § 5K2.23 (Discharged Terms of Imprisonment).

> Section 5K2.23 provides:

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

Section 5G1.3(b) applies when the "term of imprisonment resulted from another offense that is relevant conduct to the instant offense" under § 1B1.3(a)(1), (a)(2), or (a)(3). Noel meets the relevant conduct requirement of § 5G1.3(b) because his offense level was based upon the same actions that resulted in his conviction for voluntary manslaughter in state court.

Noel argues that "[b]ecause the record does not show that the [district] court was aware of its discretion to depart [based on § 5G1.3 or § 5K2.23 of the Sentencing Guidelines], the case should be remanded . . . for resentencing." However, Noel did not adequately raise this issue before the district court. While Noel's counsel filed a motion for a downward departure and a "Special

Request" seeking "credit" against his federal sentence for time served on a related state offense, he neither cited § 5G1.3 or § 5K2.23 of the Sentencing Guidelines nor argued at his sentencing hearing that the district court should grant a downward departure for a cross-referenced offense that had been fully served. Accordingly, we hold that Noel forfeited his appeal of this issue. *See United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) (stating that "[t]here is no appealable issue saved by [*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)] when a defendant wishes to appeal a discretionary factor and does not request the judge to exercise such discretion during the sentencing hearing"); *see also United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001) ("A defendant waives the right to appeal an application of the Sentencing Guidelines when he fails to object in the trial court."); *United States v. Aponte*, 19 F. App'x 213, 223 (6th Cir. 2001) (unpublished) ("[W]e hold that . . . a defendant has no right to appellate review (to the extent it can be called review) of a district court's failure to depart downward when the defendant did not first seek a downward departure on the asserted basis in the district court.").

In the alternative, we reject Noel's argument. "[W]e do not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008).[4] "[W]e presume that the district court understood its discretion, absent clear

---

[4]"We review the transcript of the sentencing hearing de novo in determining whether the district court was aware of its authority to depart." *United States v. Young*, 310 F. App'x 784, 794 (6th Cir. 2009) (unpublished) (citing *United States v. Williams*, 355 F.3d 893, 901 (6th Cir. 2003)).

evidence to the contrary." *Id.* Here, there is no clear evidence that the district court did not understand its discretion to make a downward departure.

> The district court indicated that it had considered all of Noel's arguments:

> In an effort to keep everything focused and [streamlined], I said I would consider all of the requests made and the written documents, whether they are argued or not unless they are specifically withdrawn. Nothing has been withdrawn, so I will consider those.

Moreover, the district court acknowledged Noel's "Special Request" for jail credit and stated: "[T]he time served on the state sentence cannot be credited against this sentence because that is time that was credited to a sentence that has since been concluded. . . . The Bureau of Prisons obviously will calculate credit for the offense since the defendant has been in federal custody." The district court's understanding of the law was correct: "[T]he power to grant credit for time served lies solely with the Attorney General and the Bureau of Prisons[,]" and a district court is therefore not authorized to award credit at sentencing. *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001) (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)); *see also United States v. O'Non*, 268 F. App'x 454, 458 (6th Cir. 2008) (unpublished) ("The statement by the district court that any credit for time served is properly calculated by the Federal Bureau of Prisons is a correct statement of law.").

> The record does not establish, through clear evidence, that the district court thought it was without power to depart downward based on Noel's discharged state sentence. To the contrary, the evidence shows that the district court was aware of its discretion but chose not to exercise it. *See United States v. Askew*, 108 F. App'x 341, 343 (6th Cir. 2004) (unpublished) ("In the absence of

ambiguous statements by the district court concerning its discretion, there is a presumption that the court was aware of the law it was called upon to apply, and it should be assumed that the court, in the exercise of its discretion, found the downward departure unwarranted.") (internal citation omitted); *see also Young*, 310 F. App'x at 795 ("Absent a specific request for a downward departure or variance due to a lost opportunity to run sentences concurrently, it is hard to see how the district court was somehow confused about its authority to do so, *since that was not the issue it was asked to address*."). The district court's failure to make an express ruling based on § 5G1.3 or § 5K2.23 or to mention the court's discretion to depart downward on this basis "does not imply a lack of understanding of that discretion." *United States v. Rowen*, 73 F.3d 1061, 1063 (10th Cir. 1996). Accordingly, we hold that the district court's decision not to depart downward is not reviewable.

III.

We review sentences for reasonableness under an abuse-of-discretion standard. *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005) (citations and internal quotation marks omitted).

When evaluating the reasonableness of a sentence, "we consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007) (citations

and internal quotation marks omitted). Our reasonableness inquiry is therefore comprised of both substantive and procedural components. *Id.* "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (citations and internal quotation marks omitted). "A sentence is substantively unreasonable if the district court selects [the] sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (citation and internal quotation marks omitted). While the procedural and substantive components of the court's analysis "appear to overlap[,]" *Jones*, 489 F.3d at 252 n.3, the substantive inquiry turns on "whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

In addition, we apply a rebuttable presumption of reasonableness to sentences that fall within a properly calculated Guidelines range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Where the district court imposes a sentence below the Guidelines range, "simple logic compels the conclusion that . . . defendant's task of persuading [this court] that the more lenient sentence . . . is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). *Cf. United States v. Johnson*, 445 F.3d 793, 798 (5th Cir. 2006) (applying a

presumption of reasonableness to "statutory maximum sentences where that maximum falls below the appropriate guidelines range"), *cert. denied*, 547 U.S. 1199 (2006).

A.

Noel challenges both the procedural and substantive reasonableness of his sentence. Regarding procedural reasonableness, the record shows that the district court: (1) properly calculated and considered the applicable Guidelines range, which was from 324 to 405 months; (2) applied the relevant factors listed in § 3553(a); and (3) considered Noel's arguments for a lenient sentence. The district court then sentenced Noel to the statutory maximum of 120 months, which the district court indicated was "17 years lower than the guideline minimum [and] an appropriate sentence in this case."

The district court did not err in rejecting Noel's legal objection to a cross-reference to § 2A1.1(a) for first-degree murder. "This circuit clearly allows district courts to consider acquitted conduct at sentencing. . . . under the theory that a determination of guilt requires proof beyond a reasonable doubt while sentencing considerations only require proof by a preponderance of the evidence." *United States v. Milton*, 27 F.3d 203, 208-09 (6th Cir. 1994). In fact, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an

appropriate sentence." 18 U.S.C. § 3661. Here, the specific facts surrounding Friedman's death support the district court's decision to consider a cross-reference to § 2A1.1 for first-degree murder.[5]

Next, Noel contends that the district court committed reversible procedural error by failing to consider a lower sentence based on the application of either § 5G1.3 or § 5K2.23 of the Sentencing Guidelines. However, as noted above, Noel did not argue for a downward departure under § 5G1.3 or § 5K2.23. Thus, not surprisingly, the district court did not address this argument. That omission does not warrant a ruling by this court that Noel's sentence was procedurally unreasonable or a determination that remand is appropriate. "When a district court adequately explains *why* it imposed a particular sentence . . . we do not further require that it exhaustively explain the obverse – *why* an alternative sentence was *not* selected – in every instance." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006); *see also United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006) ("[W]e will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly

---

[5]The Tennessee state court judge stated at sentencing:

I listened to the proof in the case same as the jury did and to be honest the facts of this case, if there was ever a case that was laid out for premeditated First Degree Murder, I don't know that I've ever seen a better one. Mr. Noel planned this, Mr. Noel rented a car, Mr. Noel armed himself, Mr. Noel dressed as, per his statement, so that he would blend in. Mr. Noel laid in wait for Mr. Friedman. Mr. Noel shot him once in the chest and then put the gun up to his head and fired two more shots. And, after the killing Mr. Noel disposed of the gun, disposed of the clothes and went about his business. Then gave a very, very, detailed confession to the police, detailing not only what he did but why he did it and what his intentions were. So, I, again, I respect the jury system, I respect what a jury did but I don't, I honestly don't understand their verdict in this case.

parse or address every argument relating to those factors that the defendant advanced."). "A sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005).

Furthermore, to the extent that Noel argued that he should receive credit for time served from his original arrest date, the district court adequately set forth its reasons for rejecting this "Special Request." As discussed previously, it is the Attorney General, through the Bureau of Prisons, who is authorized to grant a prisoner credit for time spent in pre-sentence detention. 18 U.S.C. § 3585; *Wilson*, 503 U.S. at 333-35 (1992); *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992). "[Section] 3585(b) does not authorize a district court to compute the credit at sentencing." *Wilson*, 503 U.S. at 334. Accordingly, we hold that Noel's sentence is procedurally reasonable.

B.

"Assuming that the district court's sentencing decision is procedurally sound, [we] should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. Noel fails to articulate why his ten-year sentence was substantively unreasonable. However, a review of the record shows that the district court properly weighed the § 3553(a) factors, selected a punishment it believed fit Noel's crimes, and explained the reasons for its sentence.

After calculating the applicable offense level under the Guidelines, and hearing from

witnesses and Noel himself, the district court conducted its § 3553(a)[6] inquiry:

> I then have to go to the 3553 factors. And on those, first looking at whether or not the defendant has demonstrated a propensity for violence in the future, the factors that the court looks to on that prong point to an affirmative response. The information that the government produced relating to the activities in the penal institution point to that fact.

> * * *

> The court has to look at the nature and the circumstances of the offense. And I stand repeatedly reminded that this is a 922(g)[] charge[,] it's a charge that the defendant was a felon in [possession] of ammunition. But this ammunition was retrieved as a part of the crime scene wherein there was a violent homicide. So that, the circumstances of the offense are again very dire, very serious and they point in favor of the government and against the defendant.

> The court has to look at the history and the characteristics of the defendant.

> The defendant in this case has only two prior countable offenses which places him in a Criminal History Category II, which is really on the low end of the criminal scale when we look at the highest criminal history category is a VI. But the court has to look at the nature and history of those offenses. And there have been violent offenses, there have been offenses involving weapons. Those things point to a decided dangerousness with respect to Mr. Noel.

> And while Mr. Noel has exhibited incredible clarity of thought and of processing today, on June 21 of 2002, again about the statement Mr. Noel demonstrated clarity of action, but that clarity of action was a course of events that led to an event that changed the lives of a lot of people, including Mr. Noel, unalterably based on those actions.

---

[6]Section 3553(a) mandates that a district court imposing a sentence consider the defendant's Guidelines range; the nature of the offense; the characteristics of the defendant; the need to deter criminal conduct, protect the public, and provide the defendant with treatment; and the need to avoid sentencing disparities with defendants who have been found guilty of the same conduct and who have similar criminal histories. 18 U.S.C. § 3553(a).

\* \* \*

So I can only assume that because of the methodical nature of the activities that led up to this act on June 21 that Mr. Noel was an individual who believed that he didn't have to abide by traditional norms of the community. And he set out and sat [sic] about to take some things into his own hands and he used a weapon and ammunition to facilitate that. He was a convicted felon at the time that he made those choices. And so again that factor weighs against him and in favor of the government.

\* \* \*

So in terms of the ammunition that is at issue here, as I said before, is the ammunition that was actually recovered from the body of the victim. And so that speaks to the seriousness of this offense.

The court has to impose a sentence that promotes respect for the law.

Mr. Noel, there is no getting around the fact that your actions demonstrate an utter lack of respect for the law. Your statement exemplified real frustration, but there can [] never be justification for allowing your frustration to drive unlawful acts. There are always consequences. There have to be. We live in an ordered society.

\* \* \*

There needs to be deterrence. There needs to be a strong statement to the public that [this] is not the way to go, and that calls for a serious, a serious sentence.

In your case, Mr. Noel, because of the history of violence, the history of threats, the lack of respect for the rule of law, the lack of respect for the justice system, I find that a serious sentence is warranted.

Regarding Noel's request for a downward departure based on a mental impairment, the

district court explained:

You have insisted that you need treatment. The reports, and I've sent you, I suppose, some two or three times to different places for evaluations when you told me there were multiple voices, when you told there were things in your eye lids, when you told me all manner of things, when you told me you couldn't sleep because there were

- 14 -

people in five different voices talking to you all the time. We have evaluated all of that and it has all come back negative.

So I don't believe, given that you – that you have told me those things, I think, Mr. Noel, that argues against any kind of lower sentence and argues for a stronger sentence because if, in fact, there is something going on that with voices in your head that could cause you to, as you say, snap like you did before, then that makes you potentially dangerous.

So, and it suggests to me that you need to be in an environment where you can, in fact, get treatment and monitoring for those conditions.

Thus, "[i]t is clear that the district court considered all the evidence and was mindful of its obligation to impose a sentence that 'fit the crime.'" *United States v. Vowell*, 516 F.3d 503, 514 (6th Cir. 2008) (citation omitted). Because Noel's sentence is below the Guidelines range, it is entitled to a rebuttable presumption of reasonableness, and, on abuse-of-discretion review, this court gives due deference to the district court's conclusion that the sentence was warranted by the § 3553(a) factors. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (citing *Gall*, 552 U.S. at 51). Considering the totality of the circumstances, *id.*, including the Guidelines, the § 3553(a) factors, the nature of the offense, and Noel's background, we hold that the ten-year sentence is substantively reasonable.

IV.

For these reasons, we affirm the judgment of the district court.